We'll go with our last orally argued case of the day, Fahie v. People of Virgin Islands. And what we, what the panel is going to do first is hear from Mr. Barry on behalf of the Virgin Islands Bar Association. Good morning, your honor. Morning. I won't be reserving any time, of course, because I've only got five minutes and I'll try to talk, talk fast here. What you need to get off the bat is why, why aren't we controlled by Basin? Oh, that's easy. The number one, the opinion in Basin was purely hypothetical because that case from an Article III standpoint was moot. The sole issue when it came to the substance involved was the reinstatement of Mr. Basin as an employee. He died during the pendency of the case. Accordingly, the case was moot. Let me read you something from the Basin case and have you respond to it if I could, okay? This comes from page 201 in Basin. Quote, this proceeding presents us with two threshold questions. One, whether we retain certiorari jurisdiction over proceedings that were filed in the Virgin Island courts before the date of enactment of H.R. 6116. And two, even if we thereby retain certiorari jurisdiction in the present circumstances under H.R. 6116, whether Basin's death moots the current certiorari proceeding. In other words, the court very deliberately determined to look at these two things in the alternative, to look at them separately and to treat them as threshold questions. Not under those circumstances where the court looks at it in that fashion and chooses to address it in that fashion. How can you say it's dicta what the court said about H.R. 6116? Anytime you have a case where there is an absence of Article III case and controversy jurisdiction, anything else is hypothetical and an advisory opinion. Respectfully, I think there's an analytical hierarchy that's involved here. And in fact, the court went on to say in that precise regard that there's no mandatory sequencing of the jurisdictional analysis. That's where the court was wrong on that case. All right, let's assume it was wrong. What can our panel do about it? It would need to be unbanked, correct? Well, the panel at this juncture is, if the court agrees that the statutory jurisdictional analysis was an advisory opinion, then the court has the opportunity to re-examine that opinion without being bound by... That's the question. On what basis? Assume we agreed with you and we thought the Basin panel got it wrong. There's a way. We're bound by our internal operating procedures. Panels don't overrule panels. The court, the Basin panel... Well, actually, this is particularly so because not only do we have a panel, we denied on Bakri hearing and the Supremes denied cert. I mean, it's pretty solid. Well, you can't say, hang your head on the Supreme Court denying cert. Okay. But stick with me. Okay. The argument was specifically made to the Basin panel, this is moot. Don't decide it. They chose in the face of that argument to say, it's not moot. We still have the jurisdiction to look at our jurisdictional argument. That's not what the case said. They lined it up. I've just quoted you the language. They said there are two threshold issues, one of which is, do we retain certiorari jurisdiction? Second is mootness. They understood there was a mootness argument. They treated them separately. That was the decision of the court to address it that way. How could we say, well, you got that wrong, so we're overruling you? No, the court said that the case was moot on the substantive issue. Indeed. Indeed.  After it adjudicated the issue that you say was wrong. Okay, but it got the cart before the horse because- And let's assume we agree with you. It got the cart before the horse. This panel can't tell that panel it got the cart before the horse. Yes, it can. How? Because it was dicta and there's specific case law, the Mariana case, specific case law saying that if something is dicta- Well, you can't turn a holding into dicta by saying you were wrong. That's what you seem to be saying. You seem to be saying because the court was wrong, that original holding was dicta. But that seems like a slight of hand that we're not free to engage in. Because the substantive merits were moot. Which is a way of saying they were wrong. No. The court said the substantive merits were moot in the Basin case. You're saying we should just disregard it as dicta. But we're not required to disregard dicta. No, half of Marbury versus Madison was dicta. I'm saying give it a good fresh look. And I think we have good reasons to do that. The court did ignore. I don't think it was carefully briefed. Can I just talk about your reasoning? Yeah. We can't help but notice that the people aren't joining you. You're kind of out there on your own on this one. That doesn't mean anything here. Well, I don't know. It's good to have the people with you. Not necessarily all the time. It may well be that they have their own reasons. I have no interest. I have no dog in the hunt. They may have their own reasons where they wish that this court would preserve its jurisdiction over the V.I. Supreme Court. They have many political reasons. They may have problems with the Supreme Court. Obviously, a defendant wants another bite at the apple. What your argument is, and you've made it explicitly, is that this decision, not the mootness point, but on the merits, that the Basin court got it wrong. They misunderstood and misapprehended the certiorari jurisdiction. And it's problematic for the administration of justice in the Virgin Islands. And as Judge Chigueras has just pointed out, evidently, the Virgin Islands doesn't agree with you. Because they're not the ones here making the argument that this prejudices the handling of cases in the Virgin Islands. Should that be troubling to us? Well, no. Because it's a little unusual to have somebody come in and say, hey, this is hurting the people. And then the people come in and say nothing about that. I think the Virgin Islands, in its executive function, and be reminded, the attorney general is an extension of the executive branch, may have more myopic interests in specifically the merits of the case. And they, as an executive branch, may want to preserve your appellate jurisdiction. But you're in the unusual position of asserting on behalf of the Virgin Islands Bar Association that the Virgin Islands Bar Association knows better what's right for Virgin Islands government than the Virgin Islands government, right? Than the attorney general's office. Okay. Yes. At least we recognize the interests of civil justice, which they quintessentially are not so concerned with. We also recognize the institutional interest of the Virgin Islands Supreme Court, which, as a result of this legislation, was supposed to achieve parity with the state courts and the state federal analog that exists. It's getting there. It's just not getting there as quickly as you would like. Well, it was supposed to get there, but got delayed over a decade by Basin. And I never really did get to my point about the analytical sequencing with the Basin court saying there's no mandatory jurisdictional sequencing of issues.  I think it's a pyramid. I think there's an analytical hierarchy. We may agree with you completely, but then we get stuck on the question of if somebody's wrong, if we think a panel's wrong, are we free to say you're wrong? And can we just say that because we say because you're wrong, it's dicta? That seems to be the arc of your argument. No. It's because we admit, and the Basin court admitted that the merits were moat. They admitted, therefore, there was no Article III case in controversy. That's the bottom base of your pyramid. From that, you could have dismissed on statutory jurisdiction grounds, but you can't proceed on an analysis of statute and reach the merits because it's a castle in the air, to quote the song. But you don't have the underlying bedrock basis for the decision. All that means is, again, that it's dicta. It doesn't mean it's wrong, but I think I've given a great number of reasons it's wrong. My time is up. Yeah, it is. Well, thank you for your briefing. Very welcome. May I just give the court two sites to look at on the case commenced language? Sure. Okay, one is Hahn versus U.S. We already have Slack versus McDaniel, and the court acknowledged that. But Hahn versus the United States, and that's at 524 U.S. 236. So... Terrific. Thank you, counsel. All right, well, thank you so much. Good morning, I was at the pleas of the court. David Caddy on behalf of the petitioner, Jamal Justin Foy, asked to reserve five minutes for rebuttal. Yeah, that's granted. It's pronounced Foy? It's Foy, yes. I know it's spelled Fahy, but down here it's pronounced Foy. To address Attorney Barry's issues very briefly, I know when you have a case, you want to look for a case that's exactly on point. We already have one in Basin. I do not think there's any case law to support the idea that there is a jurisdictional hierarchy that this court couldn't determine whether it had jurisdiction before it addressed the mootness issue. I think the court dedicated 14 out of the 16 pages in the Basin case to this very issue. So to call it dicta, I think, is beyond a stretch. This was a reasoned opinion by this court. I think the court's already recognized its internal operating procedures preclude this panel from overruling another panel. And the Basin issue tried to go on bonk and tried to go to the Supreme Court. So I don't think that this is anything that the court needs to consider at this point, because it's already been considered by the Third Circuit. As to the substantive issues in my case, the first issue is whether the court's anti-CSI instruction... Well, the issue is not whether it was correct or not. The Supreme Court has already determined that it was incorrect. The issue then becomes... Well, I have a question. Are we sure about that? What if we don't agree with what the V.I. Supreme Court did? I know we framed our question as if that was a done deal. But what if we don't agree? Sure. And I know this court issued two opinions, I think, briefly after the Supreme Court's opinion in Foy and Brown and Gorny, I think, were the two cases where this court okayed the anti-CSI instruction. But the V.I. Supreme Court is still free to determine that that instruction is improper in the Virgin Islands. It's not bound by the Third Circuit. But the question I think that's being put to you, and it's one that evidently all three of us have been wondering about, is if we look at the way the question was framed, and we think the underlying assumption, the explicit assumption in the question is erroneous, are we bound to deal with the question in that fashion? Or can we also deal with the assumption itself? Well, of course, the court's free to do whatever. But the assumption is given to the parties. The briefs were addressed pursuant to that assumption. So I think if the court is now to go back and say, well, wait a minute. Should we have even permitted you to address this issue? I think that would deprive the litigants of the opportunity to address that in briefing. And to address it more directly, there is nothing that would preclude the Virgin Islands Supreme Court from making a determination in the Virgin Islands that these anti-CSI instructions are made in the providence of the jury. Couldn't we dismiss it as improvidently granted, though? Isn't that if and only if we decide that the instruction was perfectly fine? Well, again, I have to concede that this court has already made that determination under Third Circuit precedent that the anti-CSI instruction is permissible. But I don't think that that then renders this... Did that happen after the certification? I think it was about a month after we filed briefings in this case that it did so. But I think the short answer to that question is no. Because the court would then... We have to make a determination that the Virgin Islands Supreme Court is then not permitted to make determinations on permissible jury instructions in its superior court. But it's got to... I mean, if it were to say under Virgin Islands law, this violates notions of due process, but is that how it was framed? Or did it just say this was error? And the argument is that it invades the process of the jury as a constitutional matter, that is, a federal constitutional matter. At that point, aren't we rendering decisions that are within our purview to speak to if the Virgin Islands got it wrong? I would say no, because the Virgin Islands, I think the assumption has to be they're looking at it under Virgin Islands law. Why? Why is that the assumption instead of that they are making a due process determination based on federal constitutional rights? Well, I think the reason for that is that there has to be an assumption when it's reviewing... It was essentially a state law case that is doing it under that purview to say that the court was expanding it to say that this is a... Under federal constitutional law, that this instruction is improper. I don't think that was done here. And I think if you look at what cases the Supreme Court relied on, it was state court jurisprudence from various jurisdictions. But the court, having looked at the specific facts of this case, having determined that what Judge Dunstan, the instructions he gave were inappropriate, and determining that in this specific case, his instructions invaded the providence of jury. I think we have to accept that the Supreme Court is correct in its determination for the Virgin Islands that that instruction is improper. But then you have a tough time ever getting over harmless error, right? It's kind of curious. Even if we were to say, well, look, under federalism principles, we think it's fine, albeit erroneous. Let's say it this way. It's erroneous as a matter of law for the Virgin Islands to be doing what they do in Maryland with the case that you cited there. But we respect the Virgin Islands state law right to do that. Okay. But how are we ever going to find, in light of what this court has said about that instruction, how are we ever going to find anything other than harmless error? So the question becomes, how can it be a constitutional error if we've already... Well, it's not, but isn't it non-constitutional? I mean, if it were a constitutional error, then we get into, you know... We'd be deciding the matter, right? You've just argued it's non-constitutional, but we have to assume that it's a matter of Virgin Islands law. And if we do assume that, then how do you get around what Judge Hardiman's just pointed out, which is it sure looks harmless. To determine harmlessness in a case where the trial judge admitted on the record that I understand that this lack of DNA evidence is the thrust of the defense case, that how can someone be shot 21 times at close range and there not be any blood spatter DNA from the deceased on there? I don't think that a harmless error determination can be made, recognizing that this was a huge part of the defense. And it certainly couldn't be one that was harmless beyond a reasonable doubt where you have identification... You've got to stick with this. I don't think you can have it both ways. You can't say we have to apply Chapman-style constitutional harmless error, structural error, harmless beyond a reasonable doubt review, on the one hand, which is reserved for federal constitutional error. And then on the other hand, say to us, you have to presume that this was not decided as a matter of federal constitutional law. You have to presume that this was decided as a matter of Virgin Islands law. I don't see how you can take both those positions in the same breath. And I understand that, Your Honor. When the Virgin Islands made its determination, the Supreme Court said that this instruction invaded the providence of the jury. Even though that this court might not agree that it's a constitutional issue, the Virgin Islands Supreme Court has already made a determination that this style of instruction is constitutional in that... So it's federal. So now you're saying it is federal constitutional law. It's split. Okay, so... If it's that, then it's our obligation to throw the flag and say, you know, you're wrong. It's not federal constitutional law. You've misinterpreted the federal constitution. Well, I would disagree in that once the court made the determination that this was incorrect, okay, they can then... So they made a state, what we call... You're saying that's under state law, though, right? Yes, but then the constitution... And the court also applied a non-constitutional harmless error. And that was an error because once they determined that this instruction invaded the providence of the jury and the right to have guilt determined beyond a reasonable doubt, it became... The standard of review then became one that had to be harmless. I don't want to be redundant, but I really do want to understand your logic, and I'm not. You have argued that we need to presume that this was a ruling made by the Virgin Islands Supreme Court based on Virgin Islands law, not on the basis of the federal constitution. Did I understand that correctly? That's 100% correct. Okay. And indeed, bolstering that argument is the fact that the Virgin Islands Supreme Court applied a non-constitutional standard of review to what it said was error, correct? No. Doesn't that... Doesn't the fact that the Supreme Court of the Virgin Islands applied the non-constitutional standard of review imply that maybe you're right? They were applying Virgin Islands law, not federal constitutional law. I know, and I'm not trying to evade you. The determination that was made by the court was made under Virgin Islands law. The standard that they should have applied, once determining that this instruction invaded the providence of the jury, which I think they had an absolute right to do... How can you... How can you... Maybe we just need to move on, because I'm just not following that. I don't see how you can say, it's Virgin Islands law, so you got accepted. It's Virgin Islands law, don't apply federal constitutional law here. And then say, it's federal constitutional error, therefore apply the higher, beyond a reasonable doubt, standard of review. Harmless beyond a reasonable... How do those two things go together? Where's the connection? The connection is, once the Virgin Islands Supreme Court determined that this instruction did X, and the X is it invaded the providence of the jury. That converted it into federal constitutional law? What are you relying on for that metamorphosis? What law can you point to that says, that's how that works? Well, I think anytime, and I won't have a case in sight, but anytime you have a determination that an instruction invaded the providence of the jury, that a court, like the Supreme Court, was permitted to make. Once that determination is made by the court, the judge said something that invaded the providence of the jury, that elevates it to a constitutional... I think I understand. Let me try to help Judge Jordan, because I was with him until just now. Now I think I get it. You tell me if I'm getting it. The state system thinks it's a matter of state evidence, i.e. non-constitutional. But because at the end of the day, the state system says, your evidentiary presentation usurps the role of the jury, that triggers a constitutional violation. Absolutely. And then it's our job to say, no it doesn't. See the cases we've already decided. I think at this point... Now you want to get us back to state law. You don't want us to stay in the federal realm. We've got to flip the switch very quickly back to state law and protect the federalism concerns of the Virgin Islands evidentiary rule. I think once we accept the determination of the Supreme Court that this did invade the Virgin Islands, we have to apply the Constitutional Harmless Beyond a Reasonable Doubt standard. Even when it was wrong to say that? I would disagree wholeheartedly that it was wrong. But our case law says it was wrong to say that. It does. See, we... I mean, I guess you had me with you when you were asking us to respect the right of the Virgin Islands to control its own evidence. But like I think Judge Jordan, once you flip the constitutional law switch, then it absolutely becomes our duty to opine as to whether or not the Virgin Islands Supreme Court is correctly interpreting federal constitutional law. Isn't that what we're here for? Well, yes and no. With the certiorari jurisdiction, I think you do somewhat more than just determine constitutional issues for the court. But in this particular circumstance, you have a court determining that the province of the jury was invaded. That issue is not before this court whether or not that was correct. It's if that determination is correct, what is the correct standard to apply? We are... Certiorari jurisdiction, in some sense, is to advise or to teach the Supreme Court while it develops.  We can't go back and tell them that's fine to apply a non-constitutional standard review there. It elevates it to a constitutional standard review, which has to be harmless beyond a reasonable doubt, which was not what was applied here. All right. Can I ask... I know we're past time, but I got some things on the merits, if I could. Sure. On page seven of your brief, you make the assertion, if I remember correctly, that the government struck the aiding and abetting theory of liability from the charges that close the case. Isn't it, at the close of its case, isn't it a fact, though, that after Ms. Kelly testified that they sought to put the aiding and abetting back into the case? Absolutely. That's correct. Okay. Why was that improper? You seem to say that that's wrong to do, but if something emerges in the course of the case, another theory of liability proper, why can't they seek to, on the basis of what the defense itself has chosen to do in presenting evidence, add another theory of liability to the case? Well, it's still not the government's theory that there was aiding and abetting. If you read the government's brief, they agree that they did not proceed to the jury on the aiding and abetting theory. All they did was request... They didn't. They didn't, but they seem to be saying, and in fact amended the information to provide for that because of what the defense put on in evidence. That's something they're allowed to do, isn't it? If the defense comes forward with another, with an evidentiary basis that would support aiding and abetting, why can't they go ahead and amend the information and say, put this in front of the jury? That's not our theory of the case, but it's a possible basis on which the jury could decide the case. There's several reasons for that. For one, in this case, who is the alleged aider and abetter? There has to be an aider and abetter. That's the only person that could be is Kamal Francis, who the government props up as an accessory after the fact, who argues in closing was not involved at all in the murder itself. Sure. I follow your line of argument. I'm not lost in the woods on that one the way I was on your theories about state versus federal constitutional law, et cetera. But I take their argument to me, and they'll speak for themselves, that, yeah, we presented a theory of the case that proceeded along these fashions. They put Ms. Kelly on the stand. She uses the words they. They shot him multiple times. They did this. And when she said that, that creates another basis on which the jury could find liability. And we want the jury to be able to do that. If they believe the defense, they're free to believe her and us, a little bit of both. If they believe that Francis was involved, then there's an aiding and abetting basis. I take it that that's the way they're approaching it. Like I said, in a moment here, Ms. Walker will come up and tell me if I'm wrong.  Why is that improper or wrong? Because they would have, you'd be presenting two theories of the case to the jury, which would be biometrically opposed, and you can't, the government can't have two separate theories of a case that would violate due process. To present a jury with two separate theories of the case, only one of which can be true and tell the jury to pick them. In this case. Is that what happened in Standifir? That guy was acquitted. It's not just, you know, pleading to a different charge. That guy was acquitted, and the Supreme Court said no non-mutual collateral estoppel. This is different because in this case, you have a determination, a factual and legal determination that Mr. Francis is an accessory after the fact. He pled guilty to that charge. So that's all he could ever be. And I understand if Mr. Francis was tried in this case and acquitted, the court would say, well, it's inconsistent version. That's not grounds to. What do you have? I'm sorry, what law do you have that there's judicial estoppel with respect to a separate defendant's plea agreement? Well, I think the case law cited in the brief establishes that you can only be one thing as a matter of law. You got to respond to Standifir then. But in Standifir, there was an acquittal at a trial, and there's something that could be inconsistent. But here, you're saying it's okay to have inconsistent verdicts when there's an acquittal, but not when there's a guilty plea to a lesser offense or a different offense. This is a strategic move by the government. We want to put this person up and make them as clean as possible. So there'll be an accessory after the fact. They made that determination before trial and said, we will have this person and present them as an accessory after the fact. Once they made that decision and his guilty plea. Sometimes the government makes a decision to in a drug case instead of putting on, you on the one that involved, you know, 10 kilos, right? Because they like to get the big conviction, right? But then sometimes when the jury faced with, you know, did this guy traffic in 10 kilos or not? You know, it's interesting. You get a jury verdict that says he's not guilty of that, but he is guilty of, you know, one to five kilos. Happens all the time. It's a compromised verdict. And juries are allowed to do that, right? Absolutely. And if that was the scenario in this case, I wouldn't be having this issue before the court. Once the government makes a tactical decision to have someone determined to be as a matter of law, one thing they can't then ask the judge in the case. But in the hypo, I just gave you the, the, uh, the prosecutor made a strategic decision to only try to get them on the, on the 10 to 20 kilo deal. And they, they didn't, but they still got a conviction on a lower quantity. That's where a jury is making that determination. In this case, the determination is made by a judge, a pretrial decision by the court to have someone as a matter of law, become something, an accessory to the fact, rendering him incapable of becoming another thing and eight or in a better, the government has to live with the decision it's made. It doesn't get to come to court and say, well, we're going to prop them up as an, as accessory after the fact. But, uh, but the jury still had to find him guilty. They did. But we don't know in this case if, uh, and the government concedes, um, or actually contends he was not convicted as an eight or in a better, despite the fact that the judge instructed the jury, they could convict him as an eight or in a better. We don't know the answer to that question. They should have never been instructed on aiding and abetting because, uh, that is not the government's theory of the case. And Kamal Francis cannot be an eight or in a better. Uh, and their government's not saying, well, there's maybe some third party that wasn't indicted. I'm, I'm still a little bit challenged because what you seem to be saying is that if the that binds everything that goes forward from there, that it's impossible for a jury looking at all the evidence to make a determination that, no, we think Francis had a different role. We, we think he had a different role in this, that, that that's forbidden as a matter of law. And I'm looking for the law that says that. So I, I, the case law that I cite in the brief say, if you're an eight or in a better, that's it. So to have them come back and say, well, it doesn't speak to judicial estoppel, your, your argument is essentially a judicial estoppel argument. It is having said Francis is, uh, an accessory up to the fact he, there is nothing that can happen in a different prosecution, right? A prosecution of a different defendant for the same set of events, arguably, but in a separate prosecution. It cannot be the case that other people are involved as eight or Senate betters. In other words, the government is judicially stopped from taking that step. And I'm trying to find where you've got law, a case law, statutory, any kind of law that says judicial estoppel functions in that fashion. Uh, I'm not saying that the government could never present a theory of aiding and abetting having accepted, uh, Kamal Francis as an accessory of the fact what they cannot do because he is say that he could be the eight or better. And that's as a factual point, that's not what the government did in this case. To this day, they're still saying we did not present an aiding and abetting theory to the jury. And if you read the closing argument of the government, in this case, they never say, well, maybe Kamal Francis was involved too. They say, look, he did the wrong thing at first. He was just trying to talk this man out of the shooting. So factually, uh, I don't think there's anything for them to say. Kamal Francis is the eight or better because they've already said he's not. I know him well over my time. Thank you, counsel. Thank you, Your Honor. May it please the court. Celine Walker for the people. Um, to speak on the anti-CSI instruction. Um, you heard, you heard a lot of focus. Perhaps you could try to, to address what we were speaking about. Right. And, um, the people, um, argue below that it was not improper, that the instruction was proper. And we do maintain that it was, um, just an instruction and not judicial commentary. Um, opposing counsel states that it's judicial commentary to turn it into a constitutional error. The government maintains that it's not a constitutional error. So what the, uh, Supreme court did by not elevating it to this harmless beyond a reasonable doubt, um, uh, level of review was not improper. All right. But how, how about the distinction between, I guess, what, what your adversary says is local law and where we, where we eventually may come up with viewing it through the lens of federal constitutional law. How do you feel about what, what he, what he argued to us? I would submit that yes, um, the Supreme court is well within, um, their rights to, um, that, that it was a state level argument that they made and that it wasn't considering the federal implications, federal constitutional implications. Um, I think if you read the, uh, uh, opinion as it's written, they are reprimanding, so to speak, what they consider, um, to be an invasion, but it doesn't state that it was, uh, constitutional error. It says that it's a non-constitutional error. So I don't think that it goes into this federal realm. Well, he definitely, the Supreme court definitely applied a non-constitutional error standard. Um, but what if we, but what are you, you're, you're probably aware of our case law now. Um, you know, at the inception, we probably wouldn't agree with that conclusion. Does that, does it matter? Of course, we would not want, um, the third circuit's, uh, review of the Supreme court, um, to unduly infringe upon the Supreme court's ability to make law for the Virgin islands. But based on the fact that these two cases did come out and the instruction is very close to the model instructions from the third circuit, it does seem difficult for the Supreme court panel to say, no, it was not an error, um, for them to find that it was error. When, what do we do? Um, for the people, um, if you decide to determine that the Supreme court was wrong and that it was an okay, it was, um, uh, that the instruction was proper, that's fine as well. I think what's important for us is that, um, it not be taken to a heightened standard. Should we say that that question was, uh, a question as to which CERT was improvidently granted because it has embedded within it a faulty presumption? Uh, I think that's fair. Um, we did argue against CERT. Um, we did, we do and still maintain that, um, the Supreme court is, is still young, but they were granted the ability to make law for the Virgin islands. And not every single thing may be correct the first time around. When the Supreme court, in fairness to the Supreme court of the Virgin islands, it didn't have the benefit of our decisional law on this issue at the time it made its decision. Correct? That is correct. It, and there wasn't very much law. I mean, the, the crux of it was the Maryland state courts, which were kind of teeter tottering and, um, And that's not, that's a real outlier to Maryland. It is. Um, and, and the, the, I guess the, the advice from that jurisdiction was not necessarily as clear cut as what has come down from the third circuit. So they did not have that benefit at the time. Um, you have, and I'm not suggesting that you have to make any statement, but do you have any, uh, thing to say in response to the Virgin island bar association's amicus brief, uh, with respect to, uh, to basin and our assertion of searcher jurisdiction at all in this case? So the people do not read basin as an advisory opinion or the language, um, highlighted, um, in amicus brief as dicta. We do not do that at all. We look to HR 6, 1 1 6. And it's clear that says it's based on the time that the case commenced, um, for the people, the case commenced, um, has to be the date that it was started at the trial level. There is no appellate review without the trial level. And we think that it's, um, clear reading of the language. Um, And they did invite you to, to join them, right? They did. And you declined. We did. Okay. If I could ask you about the substance here and start with a, um, I'm a little, I'm a little confused with how this has proceeded because in your briefing and in your argument in the trial, it appeared that you were in fact, as, uh, uh, as, uh, Mr. Caddy has said, you pursued a fact FOIA was, uh, acting, uh, uh, on his own at the time the crime was committed. And yet, uh, you did in fact, go back and amend the information following the defense case, right? What was the purpose of amending the information to include an aiding and abetting theory? Uh, if, uh, in fact, that wasn't something that the government was prepared to say was an appropriate foundation for a jury decision. Or maybe it was your intent to say that was the appropriate foundation for a jury decision. What's going on there? Help me figure that out. Just like you, I'm reading the record as a whole as well. I don't try, we don't try the cases. The Solicitor General's division just comes on an appeal, but from my reading of it and my understanding, the aiding and abetting instruction was a reaction, um, to the defense's, um, presentation. And that's fair for instructions to cover not only what theory the government presented, but also the theories presented by, um, the defense. Um, a large part of the case is that it wasn't him. He did not do the shooting. There was someone else there. So that aiding and abetting instruction was fair. And it covered the fact that the defense was saying it was not me. There was someone else there, which leaves open the option for the jury to believe that it was aiding and abetting as opposed to being the principal. Okay. Anything more, Counsel? No, I have nothing further. Thank you. Thank you, Counsel. Good morning again. Just a couple factual issues that I think will help clarify, uh, regarding the aiding and abetting instruction. Uh, I know Judge Jordan, uh, mentioned something about the Carroll Kelly saying they, um, just to point out specific portions of the record, there is no witness in this case that testified that there was ever more than one shooter. You're not disagreeing with me though, and I hope, I guess my hearing could be going, but I listened to the 911, uh, calls. Those were, and I watched the, the interview, uh, and in that 911 call, uh, by my hearing on at least two occasions, uh, she says they stood over him, they shot him, right? That's correct. Okay. They ran down the stairs. Right. Um, well, we came to trial and we had Carroll Kelly on the stand and we asked her very specifically, you know, well, the first thing you look at, is there more than one gun? I think Carroll Kelly says at one point, I thought there were two guns shooting. We know for a fact that's ML Cooper, the government's, uh, expert witness confirmed that all the shell casings came from the same firearms. We know there's one gun. Specifically as Carroll Kelly, did you ever see anybody shoot, uh, Omari Baltimore other than, uh, Kamal Francis? No. And if you look at the, um, joint appendix at page 740 and 741, she says the only person that saw the gun was Kamal Francis. The only shooter I ever saw was Kamal Francis. The only hesitation she gave, I think, was, um, uh, with the people, uh, standing on the stairwell, uh, and pointing, uh, across the street. We know that the shots took place at a very close range, uh, which only puts Kamal Francis, uh, as the shooter in the case. So there is no factual allegation, um, that, uh, other than from Kamal Francis that my client was the shooter in the case. Um, but for the government to say that we can request that the court, and originally there was an aiding and abetting, uh, language in the, I think there were maybe five or six charting instruments in this case. They took it in and out. Uh, but for the government to say that we're proceeding under a theory that, uh, Jamal Foy acted alone and then simultaneously say, well, you can think that he worked with Kamal Francis, who we're telling you was not involved in the shooting and was only involved afterwards. I think that presents an issue. The government is presenting two diametrically opposed theories of the case. Uh, I think it's a key... But that might be true, but unless and until you raise the issue that, yeah, my guy was there, but he wasn't the shooter. That, that, that implicates directly the aiding and abetting line of prosecution, doesn't it? Well, that if I deny being the shooter, therefore the government gets an aiding and abetting instruction. I think that's incorrect because anytime a person would put a defense on them, you, if you have a murder victim, like a Maury Baltimore... Not automatically, but when you have Mr. Francis testifying that, uh, he was the shooter, then, you know, you, you, you want the rule of law to be that when the, the co-conspirator or the co-actor points the finger and says, I didn't do it, he did it, then, then you, you can't have any aiding and abetting theory? No. And I think in a normal case where you already didn't have him determined to be an accessory after the fact and where the government was telling this court they're, they presented a theory of aiding and abetting. We're back to judicial estoppel. And I believe in this very narrow issue that would apply in, for, for two reasons. One, he's an accessory as a fact. Two, the government to this day is saying we are not, we do not contend that Kamal Francis was involved. But they don't have to. That's, that's the question that's being put to you repeatedly, Mr. Kaye, which is you, you seem to be taking the position that they're not allowed to say in effect to the court, look, this is our theory of the case, but the defense has put on evidence too. And based on what the defense has said, the jury could do something different. We want an instruction that takes into account not just our theory, but the, what the defense is saying too, because the jury can decide that they don't think we are 100% right. And they don't think the defense is 100% right. They think something kind of, you know, one from column A, two from column B, and they're allowed to do that. And if they do do that, there's still a basis for liability. We want them to know that. That's, that is the pitch that I hear from them. And you seem to be saying that just is not allowed. And that is the point I'm making. I don't think it's allowed. And I think if I can draw a parallel to cases where, let's say that the two people were being tried separately instead of at the same time, would this court permit the government to proceed under one theory in defendant A's case, and then a week later in a different trial, have a diametrically opposed theory in that case? Doesn't that happen with some regularity, particularly if the result in case one isn't to the way the government was hoping it would go? I would, the case law, and I can't say in this court, I apologize, is my understanding is if the government has a theory of the case, it cannot present a contrary theory to a different factual circumstance. Well, that's, that's if, I think there is law out there that says the government can't convict somebody of first degree murder, and then on an, and then convict another person of the same murder on a theory that, that is a single actor. You can't do that because that would be a violation of due process. But as Judge Hartman says, doesn't it happen all the time where the government says, well, we prosecute defendant A, defendant A is acquitted. All right. If the jury thinks it is an A, we're prepared to say it's B and prosecute B. I'm not familiar with any cases that have said that, but I think as a particular facts of this case are that the government doesn't have a theory that it's A or B. With respect to what Judge Jordan is saying, is he correct that the government could, could, could go the different ways? Let me give you, let me give you to follow up on Judge Jordan's point, a hypo, two guys both accused of conspiracy to commit murder. Trial number one guy gets acquitted. Government prosecution team camps on and says, geez, I think, you know, we're not going to get a conspiracy. You know, that guy's been acquitted and now he's going to walk into court and provide testimony that's really going to sink us in case number two. So let's just pursue the, you know, voluntary manslaughter individual crime and forget the conspiracy to commit murder crime. Wouldn't that be the, isn't that the kind of thing that could happen with some regularity? That could have it, but that's what I think would be a peril in this case is they walked in in a conspiracy case and said, first person, he was the murderer. He shot this person. The jury acquits and you walk into the next courtroom and say, we're not going to do conspiracy. We're just going to manslaughter murder. It was actually person B that shot this person. That wouldn't be permitted. You can't have two theories of the crime that they presented to a jury. Even if the reason the first guy got acquitted was he got on the witness stand and said, I'm an innocent man. I didn't do it. My best friend did it. His name is John Smith and here's how he did it. And then he proceeds to provide all kinds of testimony that government had never heard before laying out how John Smith did it. It's your position that in case number two, the government can't prosecute John Smith for murder. I think that it would be presenting, I think it would be a violation of due process to have two. Even when the first guy's acquitted, I don't think that matters. I guess the government's theory, uh, it can't switch. So you're saying the government, so the government has a theory and it's set in stone. And when, when, when people give new testimony and new evidence is discovered as happens every day of the week, the government can't then pivot to, I mean, isn't, isn't that the prosecutor's duty when the prosecutor is made aware of new information to, to act on the, the information that in good faith they believe to be the correct information. And that applies not only when it helps them get convictions, but that applies when it exonerates people that they've been working against for, for years. Um, so in a scenario, I have to concede that as a scenario where they obtain new information, um, could they then alter the theory of the case? I think the court's probably right, but that's not the facts of this case. It's one case where they have one theory, but ask for an instruction on an entirely separate theory that would contradict the theory that they presented to the jury. And I think that, uh, is a violation of my client's rights. So I'd ask the court, uh, to reverse and, uh, remand in this case.